CHARLES J. COLEMAN, In Equity,

*vs.*

ANGIE M. DUNTON, and others.

Sagadahoc.     Opinion June 15, 1904.

*Equity. Vendor and Purchaser. Specific Performance,* contract not enforceable.
*Notice,* as affecting purchaser.

Specific performance will be refused where a vendor after making the contract and before suit, conveyed the land to a bona fide purchaser for value and without notice.

In a bill in equity for specific performance of an oral agreement for the conveyance of real estate, it appeared that prior to the commencement of the plaintiff's bill, a deed of the property in question had been given by the defendants Dunton to the defendant Thompson, who claimed to be a bona fide purchaser thereof for a valuable consideration without notice of any prior right on the part of the plaintiff.

It was contended on the other hand that the transfer was made for the sole purpose of depriving the plaintiff of his equitable interest in the property, and that the defendant Thompson knowingly participated in that purpose ; or, if not, that he took the conveyance with a knowledge of such facts as would have induced a man of ordinary prudence and caution to make further inquiries in relation to the nature and extent of the plaintiff's interest in the premises, and hence was chargeable with notice of those facts which by the exercise of reasonable diligence he might have ascertained.

*Held ;* that although the plaintiff by force of the oral contract and the acts of part performance shown by the evidence might have been entitled to relief in equity by a decree of specific performance against the defendants Dunton, if the legal title to the property had remained in them, equity will stay its hand and refuse to disturb the title of an innocent grantee who purchased the recorded legal estate for a valuable consideration without notice of an outstanding equitable interest.

*Held ;* that notwithstanding the grounds of suspicion suggested by the evidence in regard to the bona fides of the transfer to Thompson, the evidence reported does not possess sufficient probative force to warrant a judicial finding of fact that at the time he took the conveyance and paid the consideration for it, the grantee had actual notice, even in its enlarged legal sense, that the land conveyed to him was impressed with any trust in favor of the plaintiff.

Specific performance.    Bill dismissed.

Bill in equity praying for specific performance of an oral agreement for the conveyance of a lot of land and buildings in the City of Bath.

The case is stated in the opinion.

*Frank E. Southard,* for plaintiff.

Counsel cited:    *Pulsifer.* v.  *Waterman,* 73 Maine, p. 244; *Green* v. *Jones,* 76 Maine, 563; *Rowell* v. *Jewett,* 69 Maine, 301; *Knapp* v. *Bailey,* 79 Maine, 195, 1 Am. St. Rep. 295.

*Jos. M. Trott and Arthur J. Dunton,* for defendants.

Counsel cited:    20 Am. Eng. Enc. of Pl. & Prac. 435, 439; 2 Story on Equity, 69; Beach on Contracts, §§ 72, 891, 892, 894; *Gates* v. *Gamble,* 53 Mich. 181; *Vantassel* v. *Hathaway,* 53 Maine, 18; *Snell* v. *Mitchell,* 65 Maine, 48; *Rutland Marble Co.* v. *Ripley,* 10 Wall. 339 at 359; Pomeroy on Contracts, 166; 22 Am. Eng. Enc. of Law, 1st ed. 963; *Buck* v. *Smith,* 29 Mich. 166, 18 Am. Rep. 84; *Cooper* v. *Pena,* 21 Cal. 404; Bispham on Equity, § 376; 22 Am. Eng. Enc. of Law, 1st ed. 1042; *Phillips* v. *Thompson,* 1

Johns. Ch. 131 at 148; *Woodbury* v. *Gardner*, 77 Maine, 68, p. 71; *Bennett* v. *Dyer*, 89 Maine, 17, p. 22; *Waymire* v. *Waymire*, 141 Ind. 164, 40 N. E. Rep. 523; *Purcell* v. *Coleman*, 4 Wall. 513; Beach on Contracts, § 894 and cases cited; *Buck* v. *Dowley*, 16 Gray, 555 p. 558; *Taylor* v. *Merrill*, 55 Ill. 52; *Little* v. *Thurston*, 58 Maine, 86; *Ockington* v. *Law*, 66 Maine, 556; *Smith* v. *Kelley*, 56 Maine, 64; *Kennedy* v. *Hazelton*, 128 U. S. 667; *Kempshall* v. *Stone*, 5 Johns. Ch. 193.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. The purpose of this bill in equity is to compel the specific performance of an oral agreement for the conveyance of real estate.

It is alleged in the plaintiff's bill that in September, 1895, James N. Dunton entered into an oral contract with the plaintiff to sell and convey to him a lot of land with the buildings thereon situated on Court Street in Bath, in consideration of $350 payable "in work of the plaintiff, and such sums of money as he might from time to time be able to pay; that thereupon the plaintiff entered into possession of the premises, erected a small stable or barn and two hen-houses, dug a well, and made other valuable improvements thereon; that after the death of James N. Dunton, the legal title to the property became vested in the defendants, Arthur J. Dunton, Angie M. Dunton, and Arthur J. Dunton trustee of Doris Purrington; that in pursuance of his agreement the plaintiff performed labor and made cash payments to the amount of $325, and before the commencement of this bill offered to pay the balance due under the terms of his contract, and demanded a conveyance of the property, which was refused."

The plaintiff admits that prior to the commencement of his bill a conveyance of the property was made to the defendant Samuel D. Thompson, but alleges that this "pretended sale is a part of a conspiracy between said Arthur J. Dunton and Samuel D. Thompson to defraud the plaintiff of his rights in said premises and as to him is absolutely void."

The defendants Dunton while denying in their answer that any such agreement as that set up by the plaintiff was ever made by James N. Dunton, and contending that if any such contract was made there have been no acts of part performance sufficient to defeat the operation of the statute of frauds, strenuously insist that the deed to the defendant Thompson, executed and recorded five days before the date of the plaintiff's bill, was made in good faith on their part in the belief "that any rights which the plaintiff might have had were long since lost, and that they had a perfect legal and moral right to make such a conveyance."

The defendant Thompson pleads in bar to the plaintiff's bill that he purchased the property in good faith and paid therefor the sum of $280 "without any knowledge or notice whatsoever of the plaintiff's claim that he had a prior right to a conveyance of said premises from said defendants, by virtue of any contract as alleged in said bill," and without any intent to defraud the plaintiff of his rights in the premises; and avers that he is a bona fide purchaser thereof for a valuable consideration without notice.

The case comes to this court on. bill, demurrers, pleas, answer and replication, with a report of all the evidence in the case.

It may be assumed that by force of the oral contract and the acts of part performance disclosed by the evidence, the plaintiff would have been entitled to relief in equity by a decree of specific performance against the defendants Dunton if the legal title to the property had remained in them. *Green* v. *Jones,* 76 Maine, 563; *Woodbury* v. *Gardner,* 77 Maine, 68; *Bennett* v. *Dyer,* 89 Maine, 17. But it is a familiar and well established rule that in such a case equity will stay its hand and refuse to disturb the title of an innocent grantee who purchased the recorded legal estate for a valuable consideration without notice of the outstanding equitable interest. *Whitman* v. *Weston,* 30 Maine, 285; *Knight* v. *Dyer,* 57 Maine, 174; *Cross* v. *Bean,* 83 Maine, 61; 1 Pom. Eq. 368; 2 Pom. Eq. 770.

The defendants interpose this principle of obvious justice as an insuperable objection to the maintenance of the plaintiff's bill, and exhibit in evidence a conveyance of the property to Samuel D. Thompson by deed of warranty signed by the defendants Dunton

and duly recorded five days prior to the date of the plaintiff's bill. The grantee, Samuel D. Thompson, testifies that his business is that of a carpenter; and that he has "had more or less to do with real estate in the last ten years;" that he purchased the property in question and paid $280 for it, and that at the time of the purchase he had no knowledge of any facts which led him to suppose that the grantors did not have a legal and equitable title such as would enable them to make a good conveyance to him.    In answer to an inquiry whether there was a reservation of the right of the plaintiff to remove any of the buildings on the premises, he testifies that he didn't think there was anything said about that, but on reflection he thought there was something said about moving a barn, but he "couldn't say for certain."    The defendants Dunton admit in their answer that when they made the sale to Thompson they reserved to the plaintiff the right to remove the barn and hen-houses.

It appears in evidence that Thompson lived within forty rods of the premises, and during the period of the plaintiff's occupancy he had twice called there and frequently passed the premises and had an opportunity to observe the improvements that had been made. He knew that the plaintiff was in the occupancy of the premises at the time of the conveyance in question, and two days after the date of his deed gave the plaintiff notice to "vacate the house as soon as possible," as he "contemplated making some changes in it."

Upon this state of the evidence the plaintiff sharply assails the good faith of the conveyance to Thompson, and insists that it is not only manifest that the defendants Dunton made the transfer for the sole purpose of depriving the plaintiff of his equitable interest in the property, but that the testimony in the case viewed in the light of the circumstances and conduct of the parties warrants the conclusion of fact that the defendant Thompson knowingly participated in that purpose, or, if not, that he took the conveyance with a knowledge of such facts as would have induced a man of ordinary prudence and caution to make further inquiries in relation to the nature and extent of the plaintiff's interest in the premises, and hence was chargeable with notice of the facts which by the exercise of reasonable diligence

he might have ascertained. (See *Knapp* v. *Bailey*, 79 Maine, 195, 1 Am. St. Rep. 295; 2 Pom. Eq. 595, 596.)

If Thompson purchased the property as an ordinary business transaction and paid a consideration of $280 as the full value of the property, as he states, he might reasonably have been expected to have a more definite recollection in regard to the reserved right of the plaintiff to remove the barn. On the other hand it is said that the barn was erected on posts, apparently for the temporary accommodation of the plaintiff, and if so, the right of removal would be entirely consistent with his occupancy of the premises as a tenant at will. Thus some of the extraordinary features of the transaction might be explainable upon the assumption that Thompson accepted the assurance of his grantors that the plaintiff was occupying only as a tenant at will.

After a careful scrutiny of all the evidence in the case it is the opinion of the court that, notwithstanding the grounds of suspicion above suggested in regard to the bona fides of the transfer to Thompson, the evidence reported does not possess sufficient probative force to warrant a judicial finding of fact that at the time he took the conveyance and paid the consideration for it, the grantee had actual notice, even in its enlarged legal sense, that the land conveyed to him was impressed with any trust in favor of the plaintiff. For this reason the entry must be,

*Bill dismissed.*