STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-197
GAB - YOR - 11/15/2004

JOHN FITZPATRICK,

      Plaintiff

v.

GLENDON ROWELL,

      Defendant

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

DEC 2 2004

This case comes before the Court on Plaintiff John Fitzpatrick's motion for leave to add an additional plaintiff, and on Defendant Glendon Rowell's motion for summary judgment on all counts of the Plaintiff's complaint, pursuant to Rule 56 of the Maine Rules of Civil Procedure. For reasons stated below, the Motion to Amend is Granted, and the Motion for Summary Judgment is Granted in part and Denied in part.

## FACTS

Plaintiff John Fitzpatrick (Plaintiff) bought property at 13 Sand Point Road in Kennebunkport, Maine. In 1990, Plaintiff transferred title to his wife, Jan Fitzpatrick. In a letter dated May 29, 1995, Plaintiff asked his abutting neighbor, Defendant Glendon Rowell (Rowell), if Plaintiff could, at his own expense, cut down some trees from Rowell's property and replace them with different trees in order to enhance Plaintiff's view of the ocean. Plaintiff also submitted a landscape company's diagram of the proposed planting to Rowell. Because Rowell was frequently absent, Plaintiff and Rowell sometimes communicated through Rowell's sister. Although Plaintiff later proposed an alternative plan, Rowell agreed to Plaintiff's original plan. In September

1996, the landscape company cut Rowell's trees that were obstructing Plaintiff's view, and replaced them with twelve junipers.

Beginning in 2002, Plaintiff began an extensive renovation of his house. That summer, Plaintiff contacted Rowell through Rowell's sister, asking to have the junipers trimmed because they had grown to obstruct Plaintiff's view. Rowell cut some growth from the tops of the trees. Rowell also inquired about Plaintiff's renovation plans to see whether the plans included raising the height of his deck to ensure his ocean view.

Sometime in April or May 2003, someone cut back many of the junipers along the property line with Plaintiff to a height of five or six feet without Rowell's permission, leaving limbs scattered around Rowell's property. Plaintiff and Rowell's nephew, Bruce Jones, were involved in a heated confrontation concerning the cut trees and scattered limbs in Rowell's yard. At that time, Mr. Jones said to Plaintiff "We are going to plant forty-foot trees." In May 2003, Rowell contracted with a landscape company to remove the damaged trees and plant new trees. In August 2003, the company replaced the cut junipers with five arborvitaes trees.

In August 2003, Plaintiff brought a suit against Rowell for private nuisance in erecting a "spite fence,"[1] breach of contract, and promissory estoppel, and seeking a temporary restraining order. Rowell counterclaimed, charging Plaintiff with trespass, injury to land,[2] and punitive damages. Plaintiff's Motion to Strike Rowell's counterclaims was denied.

In June 2004, Plaintiff requested permission of this court to add Jan Fitzpatrick as a named plaintiff after discovering that title to the 13 Sand Point Road property was

---

[1]    17 M.R.S.A. § 2801 (2003).

[2]    14 M.R.S.A. § 7552 (2003).

2

solely in Mrs. Fitzpatrick's name. Rowell objects and has moved for summary judgment on all Plaintiff's claims.

## DISCUSSION

### I. Plaintiff's Motion to Add Named Plaintiff.

Plaintiff argues that addition of named plaintiff, Jan Fitzpatrick, would have no bearing on the substantive issues in this case, would not add additional claims, or enlarge the scope of this litigation, and would in no way prejudice Defendant Rowell or enlarge discovery. Defendant Rowell argues that Plaintiff's motion is untimely and characterizes the request as one for "post discovery joinder." Finally, Rowell argues that Plaintiff's "joinder motion" is futile because Rowell is entitled to judgment as a matter of law on all Plaintiff's claims, whether Jan Fitzpatrick is joined or not.

When faced with both a motion for summary judgment and a Rule 15(a) motion to amend the pleadings, the Law Court has noted that "considerations of finality and judicial economy suggest that a court should dispose of the pending rule 15(a) motion prior to entertaining a summary judgment." *Kelly v. Michaud's Ins. Agency Inc.* 651 A.2d 345 (Me. 1994)(citing *Glynn v. City of So. Portland,* 640 A.2d 1065, 1067 (Me. 1994)). This is to ensure that the amending party "is not unfairly precluded from specifying facts that could otherwise defeat a summary judgment." *Id.*

Here the parties offer no evidence that Plaintiff is seeking to unjustifiably delay the proceedings by seeking to add Jan Fitzpatrick, title holder to the property and wife of the Plaintiff, to the Complaint. Nothing asserted by Plaintiff or Rowell suggests Rowell will be prejudiced by the addition of Jan Fitzpatrick, or that further discovery will be incurred. Indeed Rowell asserts that his arguments for summary judgment are in no way dependant on the absence of Jan Fitzpatrick as a party.

3

In the absence of delay and undue prejudice to the defendant, this Court Grants Plaintiff's motion to add Jan Fitzpatrick as a plaintiff in the above captioned cause of action, pursuant to Rule 15 of Maine rules of Civil Procedure.

## II. Defendant's Motion for Summary Judgment.

On a motion for summary judgment, the court will view the evidence in the light most favorable to the party against whom judgment is sought, "to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (citations omitted). The court will give the party opposing a summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22. If the record reveals no genuine issue of material fact, then a summary judgment is proper. *Curtis*, 2001 ME 158 at ¶ 6, 784 A.2d at 21. When the moving party is the defendant, the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action. *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, ¶ 8, 788 A.2d 603, 606.

Count I:  Private Nuisance.

Plaintiff alleges that the Defendant Rowell violated Maine's statute governing the erection of so-called "spite fences" when he installed five arborvitae trees to replace the vandalized junipers.  17 M.R.S.A. § 2801 provides that "[a]ny fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance."  The Law Court has held it is not necessary for a person objecting to such a fence "to prove that malice, the purpose to annoy, was the sole motive for building the fence.  It was only necessary to prove that such was the dominant motive." *Healy v. Spaulding*, 104 Me. 122, 125, 71 A.2d 472, 473 (1908).

4

However, because Maine's statute operates in derogation of the common law principle allowing such barriers as a right of private property owners, it is strictly construed in favor of the party erecting the fence. 9-62 POWELL ON REAL PROPERTY § 62.05. Thus, Maine's statute has been found not to apply when a fence served some useful purpose, even when malice was the primary motive for erecting the fence. *Id.* (citing *Lord v. Langdon*, 91 Me. 221, 222, 39 A. 552, 552 (1898))(finding that unless a plaintiff can prove that a fence was unnecessary, "there can be no liability, no matter what may be the motive of the owner in erecting it.") *Id.*

Rowell argues that because Rowell did not choose the type of tree that replaced the damaged junipers, Plaintiff has no evidence of Rowell's alleged malice or motive to annoy, and Rowell is entitled to judgment as a matter of law. Instead, Rowell claims, the only available evidence shows he was motivated by a desire for privacy. Plaintiff argues that there is ample evidence of the malice and motive to annoy in Rowell's installation of a much taller type of tree in the path of Plaintiff's view.

Here the record provides evidence of an ongoing, sometimes deeply acrimonious dispute between the parties regarding trimming the junipers, damage to the junipers in May 2003, and the installation of the taller arborvitae trees. The altercation between Plaintiff and Rowell's nephew, Bruce Jones, letters of the parties, and beliefs expressed by Rowell and others that Plaintiff was the only one motivated to vandalize the junipers, raise a genuine issue of material fact concerning Rowell's motives in installing the arborvitae sufficient to withstand Defendant's motion for summary judgment on Count I.

Count II Breach of Contract: Violation of View Easement

In Count II, Rowell argues that Plaintiff presented no evidence of any agreement to keep the trees trimmed, creating a view easement, and that enforcing any alleged

easement is barred by the Statute of Frauds. Plaintiff argues there is a genuine issue of fact as to whether Rowell entered into a binding and valid agreement for a view easement by agreeing to keep trees blocking Plaintiff's view of the ocean trimmed to a certain height, and violated the terms of the easement by planting the arborvitae. Plaintiff also argues the agreement is not subject to the Statute of Frauds because Rowell has admitted entering the agreement.

Easements for almost any purpose may be created by express agreement between private parties.[3] A property owner may give a party permission to make use of the owner's property, or may agree to refrain from doing something on his own property. RESTATEMENT (THIRD) OF PROPERTY §§ 451, 452. A negative easement gives the holder "the power to prevent the servient owner from doing, on his or her premises, acts that, but for the easement, the servient owner would be privileged to do."[4] 4 Powell on Real Property, § 34.02[2][c]; RESTATEMENT (THIRD) OF PROPERTY § 452. Whether positive or negative, an easement creates "an 'interest in land' in the possession of another." RESTATEMENT (THIRD) OF PROPERTY § 450. Because an easement is an "interest in land," "compliance with the Statute of Frauds is requisite." 4 Powell on Real Property § 34.02[1]. In Maine, the law requires:

No action shall be maintained in any of the following cases:

(4) Contract for sale of land. Upon contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them;

---

[3]    The Restatement (Third) of Property states that an easement or any servitude burdening a property is created
(1) if the owner of the property to be burdened (a) enters into a contract or makes a conveyance intended to create a servitude that complies with the Statute of Frauds or Exception to the Statute of Frauds; or (b) conveys a lot or unit in a general plan development or common interest community subject to a recorded declaration of servitudes for the developed community; or (2) if the requirements for the creation of a servitude by estoppel, implication, necessity or prescription . . . are met . . . RESTATEMENT (THIRD) OF PROPERTY § 2.1

[4]    The holder of a negative easement may be assured "access of light to his or her windows or to a solar device from the servient land, by giving to the easement owner power to prevent the creation on the servient land of structures obstructing such access." 4 Powell on Real Property § 34.02[2][c].

(5) Agreement not to be performed within one year. Upon any agreement that is not to be performed within one year from the making thereof; unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; ...

33 M.R.S.A. § 51 (2003).

There are exceptions to the writing requirement of the Statute of Frauds.[5] The plaintiff who is seeking to enforce an agreement for which no writing exists, must "remove the alleged agreement between the parties from the purview of the Statute of Frauds." *Shaheen v. Gewappi's Inc.*, 529 A.2d 805, 806 (Me. 1987); *See also Landry v. Landry* 641 A.2d 182, 183 (Me. 1994). An oral agreement "may be enforceable despite being within the statute of frauds when the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract . . . was made." *Paris Utility District v. A.C. Lawrence*, 665 F. Supp. 944, 956 (D. Me. 1987).

Here the parties do not dispute that, in 1996, they entered an agreement whereby Plaintiff would cut some trees on Rowell's property and replace them with different trees in an effort to enhance Plaintiff's ocean view over Rowell's property. That agreement is memorialized in correspondence of the parties and a drawing. The parties do not dispute that sometime in 2002, Plaintiff asked Rowell to trim the trees Plaintiff installed, because Plaintiff's view was again obstructed. The parties hotly dispute whether they entered a binding agreement in 1996 that Rowell would keep the trees trimmed to preserve Plaintiff's ocean view, creating a view easement. Plaintiff's evidence that an easement was conveyed consists solely of Plaintiff's testimony that he never asked Rowell to agree to trim the trees, but that Rowell's sister[6] told him, after

---

[5] "Court have recognized the doctrine of part performance, where reliance upon an oral conveyance is sufficient to take the conveyance out of the Statute of Frauds, ... estoppel ... [and] finally reference in a deed to a plat ... "Powell on Real Property § 34.03

[6] Plaintiff's evidence, viewed in the light most favorable to him, is sufficient to show that Rowell's sister sometimes acted as Rowell's agent in his alleged agreements with Plaintiff, for purposes of overcoming summary judgment.

7

Plaintiff proposed replacing the trees and before Rowell agreed to it, that Rowell was willing to keep any new trees trimmed to six feet. Rowell nowhere admits in his pleadings or testimony, that he was party to an agreement to trim the junipers to preserve the Plaintiff's ocean view.

None of the evidence, viewed in a light most favorable to Plaintiff, shows that any alleged view easement between the parties meets the requirements of the Statute of Frauds for a writing, signed by Rowell, memorializing the conveyance. No evidence suggests that Rowell's response to Plaintiff's request to trim the trees in 2002 was pursuant to the terms of an easement in favor of the Plaintiff. Moreover, Plaintiff offers no evidence of any theory that would remove the conveyance of an alleged easement from the purview of the Statute of Frauds, including no evidence that Rowell admits forming an agreement that included trimming the trees to preserve plaintiff's view.

Because Plaintiff offers no evidence that the creation or conveyance of any alleged easement of view complied with, or fell outside of, the requirements of the Statute of Frauds, the Court finds any alleged easement is unenforceable as a matter of law and grants summary judgment to Rowell on Count II.

Count III: Breach of Contract: Failure to Trim Trees

Rowell argues that Count III also asserts violation of a view easement, and fails because it does not meet the requirements of the Statute of Frauds. In Count III, no easement is alleged. Instead, Plaintiff charges that Rowell violated the terms of a binding agreement allowing Plaintiff to replace trees on Rowell's property with junipers to enhance and maintain Plaintiff's ocean view. Count III asserts that Rowell violated the agreement both by planting arborvitae trees and by not trimming the junipers.

In Count III, the Plaintiff charges that Rowell violated a binding agreement between the parties that would preserve Plaintiff's view by allowing Plaintiff to replace

8

Rowell's trees with junipers and by obliging Rowell to keep those junipers trimmed. In Court III, Plaintiff argues that this agreement created a contract, not an interest in property burdening Rowell's property in favor of Plaintiff. The parties heatedly dispute the evidence establishing the existence and terms of this agreement, and whether those terms were violated. Both parties cite credible evidence in favor of their view of the agreement, and of the nature of their conduct following that agreement. Because there are significant issues of material fact concerning the existence of an agreement between the parties, its terms, and whether those terms were violated, and because no interest in property is alleged, summary judgment is precluded on Count III.

Count IV: Promissory Estoppel.

Plaintiff alleges that he acted in reliance on promises by Rowell that he would keep the replacement junipers trimmed both when Plaintiff incurred the expense and effort of cutting and replacing trees on Rowell's property, and when Plaintiff later renovated his house. Rowell argues that the undisputed evidence shows Plaintiff, by his own admission, would have renovated his house with or without an agreement with Rowell, thus entitling Rowell to judgment on Count IV as a matter of law.

Under a theory of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Tarbuck v. Jaekel*, 2000 ME 105, ¶ 16, 752 A.2d 176, 180; (citing RESTATEMENT (SECOND) OF CONTRACTS § 90(1)). A promissory estoppel claim applies only to promises that are "otherwise unenforceable." *Daigle Comm'l Grp. v. St. Laurent*, 1999 ME 107, ¶ 14, 734 A.2d 667, 672 (citing *Pansonic Communs. & Sys. Co. v. Maine*, 1997 ME 43, ¶ 17, 691 A.2d 190, 196). The Law Court has found that a claim of promissory estoppel is foreclosed if

9

there is no evidence of a promise, *Tarbuck,* 2000 ME 105, ¶ 17, 752 A.2d at 180, or no evidence of reliance. *Key Trust Co. v. Nasson College,* 1997 ME 145, ¶ 12, 697 A.2d 408, 410.

Here, there is a hotly disputed issue of material fact concerning whether Rowell promised to trim the junipers to maintain Plaintiff's view. The parties' undisputed evidence includes Plaintiff's admission that he would have renovated his house regardless of Rowell's alleged promise and thus that he did not rely on Rowell's alleged promise in renovating his house. However, Plaintiff provides testimonial evidence that he relied, at least in part, on Rowell's sister's assurance Rowell would keep the trees trimmed when he proceeded to cut Rowell's trees and replace them with 12 junipers at his own expense. Plaintiff's evidence, and Rowell's denial, is sufficient to create a genuine issue of material fact concerning Plaintiff's reliance on Rowell's promise when cutting and replacing the trees at his own expense, preserving the issue of promissory estoppel on that ground, and precluding summary judgment on Count IV.

The entry will be as follows:

Plaintiff's Motion to Add Named Plaintiff, Jan Fitzpatrick, is Granted.

Defendant Glendon Rowell's Motion for Summary Judgment on Count II of Plaintiff John Fitzpatrick's Complaint is Granted. Defendant Glendon Rowell's Motion for Summary Judgment on Counts I, III, and IV of Plaintiff John Fitzpatrick's Complaint is Denied.

The clerk may incorporate this order in the docket by reference.

Dated:      November 18, 2004

GENE LIBBY, ESQ. - PL
CHRISTIAN CHANDLER, ESQ. - DEF
NEAL PRATT, ESQ. - PL

G. Arthur Brennan
Justice, Superior Court

10